HALL, Judge.
Plaintiff filed suit in workmen’s compensation against his employer’s compensation insurer alleging total and permanent disability resulting from an accident received by him on November 27, 1963, during the course and scope of his employment as a butcher. He prayed for maximum compensation benefits (less the amount of compensation previously paid) plus statutory penalties and attorney’s fees. Following trial on the merits the District Judge, being of the opinion “that the weight of the medical testimony is in favor of the defendant,” rendered judgment rejecting plaintiff’s demands and dismissed his suit at his cost. Plaintiff appealed.
The question presented is whether or not plaintiff was able to resume all of the duties of his former employment after his discharge from treatment on February 7, 1964, to return to work on February 10, 1964. Defendant has paid all compensation benefits due plaintiff from the date of the accident to February. 11, 1964.
Plaintiff, a 57 year old butcher by trade, was employed by Natal’s Supermarket in its meat department in the month of September 1963. His duties consisted of cutting and packaging meat and chickens and, in the course of such duties, he was required to lift and carry boxes of frozen chickens, weighing 40 to 60 pounds, and quarters of veal, averaging 60 to 70 pounds, from the meat cooler to the sink and work block, a distance of about thirty feet.
On November 27, 1963 the wire binding on a box of frozen chickens, which plaintiff was lifting onto the sink, broke loose causing the box to jam his knees against the sink cabinet. In attempting to hold onto the box plaintiff sustained an injury to his back. He testified that he felt something snap in his spine and that he “felt kind of numb” but had no immediate pain. He finished out the day’s work and had no significant problems until the next morning when he commenced to have considerable pain and stiffness. He went to Charity Hospital to obtain relief but the hospital contacted his employer who instructed him to go to Touro Infirmary and report to Dr. Dabney Ewin.
Dr. Ewin met plaintiff at Touro on November 28, 1963 and, after having X-rays taken of plaintiff’s back, examined him in the emergency room. He found some evidence of a back injury and mild muscle spasm. Dr. Ewin prescribed a muscle relaxant and a drug for pain and instructed plaintiff to come to his office the following day for physiotherapy. I-Ie was given daily physiotherapy at Dr. Ewin’s office and his back condition improved slowly but progressively.
On December 13, 1963, Dr. William A. Roy, an associate of Dr. Ewin, examined plaintiff in Dr. Ewin’s absence from the office. Dr. Roy found some spasm in plaintiff’s low back area and a failure to “reverse his curve.” This condition was also found to be present on December 20th and December 27th, 1963, although improvement was noted.
Dr. Ewin next saw plaintiff on January 7, 1964, and since plaintiff was still complaining of pain Dr. Ewin referred him to Drs. Soboloff & Grunsten for an orthopedic examination. Dr. Ewin examined plaintiff again on January 21, 1964 and found that all objective signs of injury had completely disappeared. Plaintiff had a full range of motion, no muscle spasm, and *709 no failure to reverse the normal curve on forward bending. At that time Dr. Ewin advised plaintiff to try to work and then report hack to him. Plaintiff reported back on January 30th stating that he had returned to work for two days and that this caused him pain. Although plaintiff exhibited no objective signs of injury, Dr. Ewin, in view of his subjective complaints, decided to give him another week of treatment. On February 7, 1964, Dr. Ewin discharged plaintiff from treatment and told him to return to work as of February 10, 1964, and to report back to him on February 13th for re-cxamination. Plaintiff failed to keep the appointment.
Subsequent to being discharged plaintiff returned to work for Natal’s but after about 10 days he did not show up. Three days after his failure to appear for work he called his supervisor and said the work was too hard. At no time after his return to Natal’s did plaintiff complain of his back, nor did he make such a complaint when he telephoned his supervisor. After leaving Natal’s plaintiff worked for about three weeks at Tony’s Meat Market, then failed to show up. The plaintiff’s witness, Sander, who worked with him at Tony’s stated that, although plaintiff complained of his back, his own opinion was that plaintiff used that just as an excuse to get someone to help him carry the meat. Sander also testified that plaintiff had had a previous back injury while working with him at B & C Supermarket.
Plaintiff returned to Dr. Ewin’s office in October 1964, complaining of back pain. He was again examined by Dr. Roy and by Dr. Ewin, and additional X-rays were made of his back on October 15, 1964. Neither could find anything wrong with his back as a result of the accident of November 27, 1963, and again referred him to Drs. Soboloff & Grunsten for an orthopedic examination.
Dr. Grunsten examined plaintiff on October 26, 1964 and found nothing wrong with him. He was of the opinion that plaintiff had “an essentially normal function of his back” and reported that “ * * Purely from the orthopedic standpoint, we see no indication for treatment and would recommend normal daily activities.”
Dr. Ewin was of the opinion that plaintiff had suffered a lumbosacral strain, and that all of his objective symptoms had disappeared as of the date of his discharge from treatment on February 7, 1964; and that plaintiff was then fully able to perform all of his accustomed duties as a butcher. Dr. Soboloff had seen and examined plaintiff in January 1964 while he was under treatment by Dr. Ewin. Dr. Soboloff reported at that time that he could find “no contraindication to his return to his regular work as a butcher.” None of the doctors who saw and examined plaintiff following his discharge from treatment on February 7, 1964, could find any objective symptoms of back injury and Drs. Ewin, Roy, Soboloff and Grunsten all agree that plaintiff was as able to perform the work required of him as a butcher as he had been before the accident. Plaintiff’s continued complaints of pain were ascribed by these doctors to an arthritic condition of his spine which all of the doctors (including Dr. Byron M. Unkauf who testified for plaintiff) agree antedated the accident of November 27, 1963.
X-rays taken of plaintiff’s back at Touro Infirmary on the day after the accident revealed that plaintiff had definite osteo-arthritic changes compatible with his age and that he had some exostosis or overgrowth of bone at the edge of the fourth lumbar vertebra and also a spina bifida occulta, which is a congenital deformity.
Dr. Unkauf, testifying on behalf of plaintiff, was essentially of the opinion that, although the osteoarthritic changes shown by the X-rays antedated the accident, they had been aggravated thereby. However the record shows that the X-rays taken in November 1963, and those taken in October 1964, show no changes in plaintiff’s back.
*710 We are of the opinion that the Trial Judge correctly evaluated the medical testimony. After considering the record as a whole, including the lay testimony, we are of the opinion that plaintiff has failed to bear the burden of proving his claim by a preponderance of the evidence. (See Guillory v. New Amsterdam Casualty Company, 244 La. 225, 152 So.2d 1.)
For the foregoing reasons the judgment appealed from is affirmed, plaintiff-appellant to bear the costs of this appeal.
Affirmed.